**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**KARLA MOORE AND CRAIG MORRISON,**
**Individually and On Behalf of Others Similarly Situated**          **PLAINTIFFS**

**v.**          **CASE NO. 4:12CV00033 BSM**

**CRAIN MEDIA GROUP, LLC;**
**CRAIN MANAGEMENT GROUP, LLC; and**
**CRAIN AUTOMOTIVE HOLDINGS, LLC**          **DEFENDANTS**

## ORDER

Plaintiffs Karla Moore and Craig Morrison (collectively "plaintiffs") move for partial summary judgment. [Doc. No. 17]. Defendants Crain Media Group, LLC, Crain Management Group, LLC, and Crain Automotive Holdings, LLC (collectively "Crain") object to plaintiffs' motion and cross-move for summary judgment. [Doc. No. 24]. For the following reasons, both motions are denied.

## I. FACTUAL BACKGROUND

Plaintiffs began working as radio show hosts at a station owned by Crain in September of 2010. In addition to hosting a radio show, plaintiffs' employment consisted of making remote broadcasts, being on-call for severe weather coverage, updating social media sites, and executing scripted commercials. Their show, "Craig and Sam in the Morning," aired between 6:00 a.m. and 10:00 a.m. The radio station's format was to play more music than its competitors. Consequently, plaintiffs' on-air time consisted of playing music, with three to four breaks from music per hour. Each break lasted no more than five minutes. During the breaks from music, plaintiffs discussed topics provided to them by a prep service and also

conducted promotional games with prizes. At least one of the promotional games was created by plaintiffs based on their previous radio experience.

It is undisputed that plaintiffs conducted their show without scripts. It is also undisputed that Crain staff conducted on-air checks in order to provide plaintiffs with detailed feedback and direction on how to discuss the topics. The parties, however, dispute the degree of control exercised by Crain over the topics and the manner in which they were discussed. Plaintiffs allege that Crain directed plaintiffs regarding which topics to discuss and limited the manner in which those topics could be discussed. Crain alleges that plaintiffs generated creative content for their show and were only provided with general feedback and critiques aimed at helping the show target its intended demographic. Plaintiffs also allege that they had no input into the music they played. Crain disputes this allegation and states that Morrison provided input regarding the show's music selection.

Plaintiffs assert that, in addition to their $30,000 per year salaries, Crain agreed to pay them $50 per hour for remote appearances. Crain denies this and states that plaintiffs understood that their salaries were intended to compensate them for all hours worked, with opportunity for additional compensation in the form of "talent fees." Crain states that plaintiffs would earn talent fees when an advertiser hired them to promote a product. Crain further states that there was no agreement that plaintiffs would be compensated for remote appearances related to promoting their brand or for charitable causes.

At some point soon after their employment began, although it is not clear exactly when, plaintiffs began complaining about being required to work more than forty hours per

week.  They also began writing down their overtime hours on their timesheets.  Plaintiffs

state that before they began documenting their overtime hours, they asked Gladner directly

if their jobs were secure.  According to plaintiffs, Gladner not only told them that their jobs

were secure, but said that he was going to make changes that they would like.  Plaintiffs were

terminated on November 28, 2011, and replaced by another radio show host.

Plaintiffs filed suit against Crain, alleging violations of the Fair Labor Standards Act

("FLSA").  Plaintiffs specifically allege that Crain failed to pay them for overtime and

retaliated against them by terminating them after they made complaints.  Plaintiffs move for

summary judgment seeking a determination that they were not exempt from the FLSA as

creative professionals, executives, or as administrative employees.  Crain moves for summary

judgment, seeking a determination that plaintiffs were exempt from the FLSA because they

were creative professionals.  Crain also moves for summary judgment on the issue of

retaliation and the proper method of calculating overtime.

## II. LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in a light most favorable

to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477

U.S. 242, 249-50 (1986).  Once the moving party demonstrates that there is no genuine

dispute of material fact, the non-moving party may not rest upon the mere allegations or

denials in his pleadings.  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  Instead, the

3

non-moving party must produce admissible evidence demonstrating a genuine factual dispute that must be resolved at trial. *Id.* Importantly, when considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). Additionally, the evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Plaintiffs move for summary judgment, stating that they do not fall within an FLSA exemption. In response, Crain moves for summary judgment, stating that the creative professional exemption applies to plaintiffs and that plaintiffs have failed to demonstrate any evidence of retaliation. Alternatively, Crain seeks summary judgment on the issue of damages, stating that the flexible workweek calculation is the appropriate calculation of plaintiffs' overtime claims. Summary judgment is denied on all issues for the reasons stated below.

A.    Fair Labor Standards Act Exemptions

The parties agree that the FLSA's administrative and executive exemptions do not apply to plaintiffs. The parties, however, dispute whether the creative professional exemption applies. Both parties' motions for summary judgment are denied because there are material factual disputes that must be decided in determining whether the exemption applies to plaintiffs.

Under the creative professional exemption, an employee may be exempt from the

FSLA's overtime requirements if his primary duty is performing work "[r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative behavior." 29 C.F.R. § 541.300. Journalists "may qualify as exempt creative professionals if their primary duty is performing on the air in radio...or acting as a narrator or commentator." *Id.*, § 541.302(d). Because the duties of employees vary widely, the determination of whether an employee is exempt must be made on a case by case basis and turns, in part, on the "extent of invention, imagination, originality, and talent exercised by the employee." *Id.*, § 541.302(c).

Crain argues that because plaintiffs spent more time on their show than on any other duties, performing on-air was their primary duty. Plaintiffs argue that the majority of their show consisted of music selected solely by Crain, from which they were only allowed to take three or four breaks of no more than five minutes per hour. Plaintiffs also argue that Crain controlled the topics they discussed on-air, as well as the manner in which they discussed them. Crain contends that it provided only critique and feedback to plaintiffs based on the show's targeted demographic.

This is clearly not a case appropriate for summary judgment because there are disputed factual issues as to both the nature of plaintiffs' duties and the degree of creativity they exercised in performing those duties. The ultimate question of whether a party is exempt under the FLSA is a question of law, but disputes regarding the nature of an employee's duties are questions of fact. *See Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000). Accordingly, both parties' motions for summary judgment are denied

on the issue of the applicability of the creative professional exemption.

B.    Fair Labor Standards Act Retaliation

Plaintiffs allege that Crain terminated them in retaliation for complaining that they were not being paid overtime. Crain moves for summary judgment on the retaliation issue, stating that plaintiffs cannot establish a prima facie case. Summary judgment is also denied.

The FLSA prohibits employers from discharging or discriminating against an employee for filing a FLSA complaint. 29 U.S.C. § 215(a)(3). Claims of retaliatory discharge are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005). To establish a prima facie case, plaintiffs must demonstrate three things: (1) they participated in statutorily protected activity, (2) they suffered an adverse employment action, and (3) a causal connection exists between the two. *Id*. at 1034-35. Once plaintiffs have done so, the burden shifts to Crain to articulate a legitimate, non-retaliatory reason for their termination. *Id*. If Crain is able to articulate such a reason, plaintiffs must then demonstrate that the stated reason is mere pretext for retaliation. *Id*.

Plaintiffs can easily establish the second element because they were terminated. They also state that they engaged in protected activity by complaining to Crain, both in writing and verbally, about the fact that they were not being paid overtime and by recording their overtime hours on their timesheets. The more difficult question arises as to the causal connection between their complaints and their termination. Crain points out that plaintiffs, whose claim is based on the timeline of events, began making complaints months before they

were terminated.  Indeed, Riverfest, an event in May of 2011, which is cited by Moore as triggering a major discussion with Crain about overtime, occurred approximately five months before plaintiffs were terminated.  Under Eighth Circuit precedent, even a two month gap between the protected activity and the adverse action "so dilutes any inference of causation" that, as a matter of law, no causal link can be found to exist, absent some evidence in addition to temporal proximity.  *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002).  Plaintiffs, however, state that before they made their overtime complaints, Gladner assured them that their jobs were secure.  Although the connection between termination and plaintiffs' complaints is legally tenuous, it is found that a reasonable jury could conclude that a causal connection exists between plaintiffs' complaints and their termination.

Crain's non-retaliatory reason for discharging plaintiffs is that it saved money by replacing plaintiffs with one other local radio personality who was well known and popular in the community.  Plaintiffs assert that Crain's reason for discharge is pretext for retaliation because they had been promised that their jobs were secure before they started complaining about overtime pay.  Whether plaintiffs were terminated to save money or because they complained of Crain's failure to pay for overtime is a question of fact best left to a jury.

Summary judgment is therefore denied on plaintiffs' FLSA retaliation claims against Crain.

C.    Application of the Fluctuating Work Week Method

Finally, Crain moves for partial summary judgment, arguing that if plaintiffs were not

exempt from the FLSA, the proper method for calculating damages is the fluctuating work week ("FWW") method. Plaintiffs argue that the FWW method does not apply to employees who are misclassified as exempt and that Crain has not demonstrated that the conditions necessary for applying the FWW method have been met.

The FWW method assumes that the salary was intended to compensate the employee for all of the hours worked, rather than only for forty hours, and it reduces the amount of damages an FLSA plaintiff may recover. 29 C.F.R. § 778.114; *see also Smith v. Frac Tech Services, LLC.*, No. 4:09CV00679 JLH, 2011 WL 96868, at *34 (E.D. Ark. Jan. 11, 2011). Under this method, a successful plaintiff receives overtime compensation at only half of his regular rate of pay, instead of the usual one and a half times the regular rate. *Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896, 918 (D. Minn. 2010). The FWW method applies if: (1) the employee's hours fluctuate from week to week; (2) the fixed weekly salary received remains the same regardless of the numbers of hours worked during the week; (3) the fixed salary provides compensation at a regular rate that is not lower than minimum wage; (4) the employee and employer have a clear, mutual understanding that the weekly salary is fixed, regardless of the number of hours worked; and (5) the employee receives a fifty percent overtime premium in addition to his fixed weekly salary for all hours worked in excess of forty. *Id*. Under currently binding Eighth Circuit precedent, the FWW method is the proper method for calculating damages for employees who have been wrongly classified as exempt from the FLSA. *Frac Tech Services, LLC.*, 2011 WL 96868, at *35.

There are disputed issues of material fact as to whether plaintiffs' salaries were

intended to compensate for all hours worked. Crain states that there is no proof that refutes that the parties had a mutual understanding that plaintiffs' salaries were intended as compensation for all the time they spent on their duties, but this is simply untrue. Plaintiffs state that they believed they would be compensated for all remote appearances at $50 per hour, in addition to their salaries. Further, they began recording all of their hours, including those over forty, on their timesheets. As a result, a reasonable jury could conclude that there was no mutual understanding between the parties as to whether the salary was intended to compensate for all hours worked.

Consequently, summary judgment is denied without prejudice and Crain will be given an opportunity to be heard on this issue at the close of proof at trial.

IT IS SO ORDERED this 6th day of March 2013.

_____

UNITED STATES DISTRICT JUDGE